The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We have four cases for resolution on our docket this morning. Two cases are set for argument. The first case is 20-1896 Foxconn Interconnect Tech v. Amazon Technologies, Inc. Counsel for the appellant, Mr. Reynolds, you have reserved five minutes of your time for rebuttal. Is that correct? That is correct. Thank you. Okay. You may proceed, please. John Reynolds, Baker and Reynolds Counsel for the appellant, Foxconn. This case was submitted to the board by Amazon, the appellee, on a very scant record. It comprised of registrations and applications in issue, discovery responses of applicant appellant, a notice of reliance on a small number of Internet articles concerning Amazon's product bearing Amazon's marks, and a stipulation regarding the specimens of record for the registrations and applications in issue. The first primary argument concerns Amazon's notice of reliance on the Internet articles submitted as Amazon's sole support for its claim of consumer awareness and fame. Counselor, this is Judge Rayner. Do you think this is your primary argument? This is the strongest argument you're making? Well, no. Actually, I think the one concerning appellant's evidence of third-party registrations is at least as primary, if not more primary, yes. Okay. Because you raise a lot of issues here, and I want to make sure that we hear what your strongest position is. The reason I decided to open with the Internet articles is that Amazon has argued that this was argued for the first time on appeal, the issue of the timeliness of the articles as they relate to whether or not they're competent. And I wanted to address that, if I may. Yes, the timeliness of those articles was from a section in 2 McCarthy at 1180 that says that the second evaluates the actual customer recognition value of the market at the time registration is sought, or at the time the mark is asserted in litigation to prevent another's use. Now, this was raised by the board and referred to by the board in its decision. So it's my position that it was raised by the board, albeit I believe that the board failed to properly apply at the time its mark was asserted in litigation properly. In arguing that it was for the first time on appeal, the Amazon refers to cases in footnotes 49 and 116 of its brief to Golden Gate and Hylite and Forche v. Prentipi. And Forche discusses the three listed exceptional or limited circumstances where a party can raise an issue. And the third states that appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, but only if an issue is properly before the court. And I would argue that the fact that the board raised it means that it is properly before the court. But also in Forche it says that a waiver will not necessarily occur, however, if a party simply presented new or additional arguments in support of the scope of the issue. And that's exactly what the appellant has done here in bringing up the timeliness argument. And Forche also states that the court is not limited to a particular legal series advanced by the parties, but rather retains the independent power to identify and apply proper construction of governing law. Jeff, sir, I think we may understand that argument now. I know you have a whole mess of fish to fry. Can you move on to some of the other issues? Sure. One, I think, is the lack of consideration by the board of the term Amazon in determining similarity of the marks. The appellee, Amazon, argues that the word echo is the dominant portion of the party's marks. The board itself never raised the issue of the dominant portion of the party's marks, but simply stated that echo was the mark. And I would submit that in the event that the appellate court takes any consideration of the dominant portion of the mark issue, that it's clearly Amazon and Amazon echo that is the dominant portion because Amazon is the sensible portion of the mark and echo is the suggestive portion of the mark. And that the four registrations with Amazon echo should not be considered to be confusingly similar to the appellee's duo echo mark as Amazon is the dominant portion of the mark and is also the house mark associated with Amazon. And if you look at the, going back real quickly to the internet articles, you'll note that in nearly every single instance, the word echo is very close to or adjacent to the word Amazon. It's Amazon echo, Amazon's echo, echo by Amazon. And that the independent issue of echo does not exist on the record except in association with the word Amazon. Going back to the third party registrations, I'll deal with that. The third party registrations are given short shrift by the board, but also by appellee in its brief. And one thing is that the registrations, the third party registrations are not just simply... Counselor, isn't it the case that most of those, at least there seems to be a finding here, that most of those third party registrations were not in use? No, there's no such finding. There's a finding that there was not evidence of use of them, but there is no finding that there was no use of them. And in fact, the registrations, and this is one thing that I would like to bring up here, is that the registrations, every registration on the principal register, except for... Every one on the principal register carries with it prima facie evidence of the validity of the registered mark, the registration of the marks, and the registrant's ownership of the marks, and the registrant's exclusive right to use the registered mark in commerce in connection with the goods or services. That's section 7B of Lanham Act. Further... So it seems to me that the board acknowledged the third party marks, but didn't give them much weight. That's correct. In fact, the board said, considering the record as a whole, Amazon's marks fall within the normal scope of protection to which inherently distinctive, suggestive marks are entitled. That's a factual finding, isn't it? That is. And that's entitled to substantial evidence. Why is that? Is there a lack of substantial evidence, or is this unsupported by substantial evidence? The third party marks are a fact, and they were taken into account, but the issue here is that they weren't given enough account, because I believe that in evaluating them, that they make the term echo. You want us to re-weigh the factual finding of the board? Yes. Can we do that? I believe you can. I believe you have the authority to do that. It seems to me that our standard of review here is substantial evidence. Yes. We have to look at the board's findings and determine whether that finding is supported by substantial evidence or not. That's not re-weighing the evidence. That's not making a new finding. It's not a new finding, but it's a finding that the substantial evidence supports the fact that the competitors that are the subject of those third party marks chose the term echo for a suggestive reason, and that it becomes a part of the whole scenario of how weak or strong the term echo is when applied to the first and second DuPont factors and how it's weighed. Obviously, highly suggestive marks are able to be distinguished more readily by differences in the marks, and we don't have identical marks here, than marks that are not highly suggestive. In this case, I think that the board failed to make the right factual determination as to the strength of the evidence to show that the marks are extremely weak and diluted. Okay. They were chosen for a particular reason. You're into your rebuttal. You're right. You can continue or you can save it. I'll save it. Thank you. Okay. Thank you. Mr. Varas. Thank you, Your Honor. Christopher Varas of Kilpatrick, Townsend, and Stockton on behalf of Amazon. Your Honor, the board decided this opposition correctly, and it did so based on the first three DuPont factors. Those compare the marks, the goods, and the channels of trade. The facts that the board found and where the substantial evidence standard is applied as to all three of those factors are undisputed, and all of them weigh in Amazon's favor. The Foxconn's mark incorporates Amazon's entire registered echo mark, which Amazon has registrations in addition to the Amazon echo registrations. The identity and the incorporation of the entire echo mark increases the similarity of the marks as a matter of law. The goods are legally identical, making subtle differences in the marks less significant. And in this case, there was also marketplace evidence showing that the party's current goods look similar in the real world. Echo is a cylindrical speaker, and duo echo is a cylinder that splits into two speakers, duo echo. The goods travel in the same channels of trade and are directed to the same consumers. In fact, the only thing that's not identical for purposes of the first three DuPont factors in this case is Foxconn's duo prefix. And the board examined that prefix carefully and correctly held that for these goods, the duo prefix does not distinguish the marks. If anything, the marketplace evidence makes it clear that the prefix makes confusion more likely in this case. Echo is a single speaker shaped like a cylinder, and duo echo is a cylinder that splits into two speakers. The first three factors are routinely held to be dispositive and oppositions. And given the undisputed fact, it's hard to imagine what record Foxconn could have created to overcome them. But what is clear is that it did not create such a record in this case. Foxconn's only evidence that could even theoretically have weighed against the first three factors was ubiquitous evidence of third-party echo marks on the registry and in the marketplace under the sixth DuPont factor. Based on the evidence that Foxconn made of record, Amazon and Foxconn are the only parties actually selling speakers under an echo formative mark. In other words, based on the evidence that was before the board, the marketplace choice for consumers would literally be between two cylinders, a single unit called echo and a two-in-one unit called duo echo. Now as for the third-party registrations, Foxconn offered a list of 24. And even that was so stretched, it included multiple marks that contained the term eco, a reference to ecology, creating the impression of being eco-friendly, which is a completely different commercial impression than echo. The marks that did include the word echo covered a myriad of goods, ranging from aerospace processing boards to devices for analyzing wildlife sounds. The board examined all of those registrations and correctly held that registrations covering such a broad range of goods merely reinforced the dictionary definition of echo and do not narrow the scope of protection for Amazon's registered echo mark in this case. Now in its briefing, Foxconn leans into seven of these registrations that it argues contain some goods that overlap with Amazon's echo registrations, even if the court accepts that characterization. As a matter of law, seven registrations are not the kind of powerful or ubiquitous evidence that you need to narrow the scope of protection for a registered mark, certainly not when the first three factors weigh so heavily in the opposer's favor and there is no evidence at all of relevant third-party use in the marketplace. The board also pointed out, and Foxconn has no answer for this, that the marks in its list were even less relevant in this case because those marks do not modify echo with a descriptive prefix, the way Foxconn's duo echo does. So the sum total of evidence relevant to the six DuPont factors, which is the only one that could have weighed against the first three, is that echo is in a relatively small number of registered marks that cover a broad range of goods relating to sound and the only speakers currently offered in the marketplace under an echo mark are echo and duo echo. Under the substantial evidence standard, nothing in that record would justify reversing the board and finding that it erred when it concluded that echo is entitled to the normal scope of protection for a suggestive mark in this opposition. And that's literally all of the evidence that informs the board's weighing of the DuPont factors that were relevant to the outcome in this case. The identical goods, the identical trade channels and consumers, no meaningful third-party evidence, a mark that incorporates Amazon's entire echo mark with a descriptive prefix and marketplace evidence showing the products look similar. Foxconn has no answer for that evidence, which is more than sufficient to support the board's conclusion. And that's where these diversionary arguments about highly suggestive and commercial strengths come in. None of these issues and none of the arguments Foxconn raises would change the outcome in a straightforward DuPont analysis under the undisputed evidence. I would submit that this court can and should affirm the board without even engaging on any of these diversions. But to the extent the court feels it's necessary to address Foxconn's arguments, all of them lack merit. As to this distinction between suggestive and highly suggestive, there's no reason for this court to make new law and open the floodgates of appeals by ordering the board to subdivide the suggestiveness category on the spectrum. The existing DuPont factors are more than sufficient for the board to properly analyze the relevant evidence in any opposition. And even if this court were inclined to consider looking more closely at suggestiveness, there's no reason to do so on this record because there's no meaningful evidence of third-party registrations and no evidence at all of third-party use for the relevant goods. And that brings me to the commercial strength issue. Foxconn spent a great deal of its briefing. But commercial strength was not a dispositive part of the board's decision and cannot be the basis for reversible error under any circumstances in this case. Even if the board had disregarded all of Amazon's evidence, the fifth factor would simply have been excluded as irrelevant. And if you look at the board's conclusion and the basis for its decision, that's exactly what happened anyway, as it frequently does. The board found that the first three factors were dispositive regardless of commercial strength. And that made perfect sense given how strongly the first three factors tip in Amazon's favor. Those facts were more than enough for the board to find confusing similarity regardless of whether Echo has any commercial strength or not. That's exactly what the board did. And so on review, this court could not find reversible error regardless of what it decides about those articles. But while excluding Amazon's articles wouldn't have changed the outcome, I do want to point out that the arguments in Foxconn's briefs are legally wrong. Under the SAFER rule, Amazon's articles are competent evidence that Echo was part of a national conversation that was covered in CNN, the Wall Street Journal, Reuters, Bloomberg, CNBC, CNET, PC Magazine, and others. The fact of that coverage is competent evidence that Echo had at least some level of commercial strength, which is all the board found. As to the dates of the articles and the timeliness, this court should not create a new rule freezing the record for commercial strength at some point in the past. Unlike secondary meaning or dilution fame, likelihood of confusion is forward-looking. How will this mark impact consumers if it registers? That's why the board routinely considers evidence from up until the time of trial. If Congress had wanted to freeze likelihood of confusion evidence at some point in the past, it would have done so. But that wouldn't have made any sense, given the forward-looking nature of the inquiry. And that's why Foxconn is forced to reach for that out-of-context McCarthy quote that we put in context in our briefing. Finally, with respect to the seventh and the eighth factors on actual confusion, the board correctly held that a single partial printout of an Amazon.com listing of a third-party offering to import a Duo Echo speaker from Japan for over $1,000 is not meaningful evidence of coexistence that could possibly make actual confusion relevant. To the extent the court has questions or concerns about any of these issues, I'm happy to address them or field any other questions. But none of the issues that Foxconn has raised change the outcome in this case. This isn't a difficult appeal. Echo and Duo Echo were identical goods that looked the same in the marketplace, undisputed evidence that tipped the first three DuPont factors dispositively in Amazon's favor. No meaningful third-party registrations and no evidence at all of relevant third-party use. The likelihood of confusion here is clear on its face. The board got this one right, and we respectfully ask that this court affirm. Thank you. Okay, thank you, Mr. Veras. Let's hear back from Mr. Reynolds. I think you have a little bit over four minutes left, sir. Yes, thank you. Mr. Veras raised the issue of the stating that the first two factors, DuPont factors are dispositive. It's not so much that they're dispositive unless the marks are identical and the goods are identical. But by the very nature of an opposition proceeding based upon Section 2D, you have to consider the applications and registrations against each other, which necessarily means that you're going to be considering the similarity of the marks and the relatedness of the goods. But that can be completely turned upside down by, for example, evidence. Let's say the marks were similar, but there was enormous evidence of actual confusion. Actual confusion would tip the scales. Sophistication of consumers can tip the scales, as can weakness of a mark, which is why we've argued that the mark is weak and diluted. Weakness of a mark especially affects the first DuPont factor, as does the similarity. Mr. Veras has also stated that the board routinely allows proof of fame  The cases cited by Amazon in its appellate brief all refer to, in this regard, all refer to marks that have had long-time fame, you know, 30 years, 20 years. And in those cases, there was testimony. In some of those cases, there were surveys. And they showed that the marks were famous at the time that the litigation commenced, at the time the marks were asserted. The fact that the board allows proof of fame after that is to show that fame is ongoing, which is not necessary. In this case, they initially have to show that they had fame, and it's their position that they had to show fame at the time that the marks were asserted in litigation, namely at the time of the filing of the notice of opposition. And that's all I have right now. Okay. Thank you, sir. This case will be taken under submission.